## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHAEL CAMPBELL,

      Plaintiff,

      v.

TOWNSHIP OF NORTH BRUNSWICK,
MAYOR FRANCIS WOMACK, CHIEF
JOSEPH BATTAGLIA, CAPTAIN
CORDELL HARRIS, PBA PRESIDENT
JASON VALLESE, and PBA LOCAL
160,

      Defendants.

Civil Action No. 23-1167 (RK) DEA

**OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court on a Motion for Judgment on the Pleadings filed by Defendants Township of North Brunswick, Mayor Francis Womack, Chief Joseph Battaglia, and Captain Cordell Harris (collectively, "Defendants"). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

## I.   **BACKGROUND**[1]

### A. FACTUAL BACKGROUND

Plaintiff Michael Campbell ("Plaintiff"), who is proceeding *pro se*, is a retired police officer. (ECF No. 21-1 at *3–4 ("Statement ISO FAC").)[2] Plaintiff was employed by the North Brunswick Police Department ("NBPD") from 2002 until his retirement in 2020. (*Id.*) According to Plaintiff, the vast majority of the workforce at NBPD is "male and Caucasian," such that the "work environment had the look and feel of an 'old boys' network." (*Id.* at *3.)

In 2016, Plaintiff began submitting written complaints about NBPD's "treatment of minority citizens, and especially African American [c]itizens." (*Id.*) To those ends, Plaintiff raised concerns regarding NBPD's alleged "racial ticketing practices," "minority business complaints of harassment by [NBPD]," and "targeting of African American [c]itizens." (*Id.*) Plaintiff also alleges that NBPD had a ticket quota system, requiring all officers to write a minimum of ten (10) traffic summonses per month and encouraged officers to write additional summonses, which had a disparate impact on minority citizens. (*Id.* at *5.) Plaintiff further alleges that on September 7, 2018, Defendant Joseph Battaglia, Chief of Police at NBPD, and Defendant Cordell Harris, NBPD Captain, (*id.* at *1–2), "engaged in car sales activity" while on duty, (*id.* at *8). According to Plaintiff, minority officers, including African American and Latino officers, were mistreated. (*Id.* at *2.) In retaliation for Plaintiff's complaints, Defendants allegedly "drafted a directive in the

---

[1] The Court has endeavored to organize and recount Plaintiff's allegations for purposes of ruling on Defendants' Motion for Judgment on the Pleadings, but notes that the Amended Complaint is difficult to discern and quite discursive. Indeed, Defendants argue that Plaintiff's claims should be dismissed for failure to comply with Federal Rule of Civil Procedure 8(a) (Def. MJP at 8.) Because other bases compel dismissal of this case with prejudice, the Court finds it unnecessary to address Defendants' Rule 8 argument.

[2] Plaintiff filed a statement in support of his Amended Complaint that includes some allegations that are in separately numbered paragraphs and some allegations that are not. In addition, the statement does not have page numbers. The Court therefore refers to the CM/ECF pagination and denotes same by asterisks.

summer months of 2018 on a weekend morning, to ban the Plaintiff from writing more than one (1) summons to a motorist . . . ." (*Id.* at *13.)

Plaintiff alleges that on or about July, 2019, he filed a complaint reporting the illegal car sales and the overtime ticket quota system. (*Id.* at *8.) This report was filed with the North Brunswick Internal Affairs Unit in September 2019, with the "Whistleblower Division" of the Middlesex County Prosecutor's Office Integrity Unit in October 2019, and to the Attorney General's Ethics Division on November 25, 2019. (*Id.*) Plaintiff appears to allege that he used his body worn camera to make a recording in support of his report. (*Id.* at *9.)[3] On or about January 7, 2020, the Middlesex County Prosecutor's Office cleared Battaglia and Harris of wrongdoing. (*Id.*) Plaintiff also seems to allege that Battaglia "altered" the Prosecutor's Office findings and that the Prosecutor's Office insisted that Plaintiff had violated department policy. (*Id.* at *10.) Plaintiff also alleges that in November of 2019, Plaintiff reported an illegal room search that occurred in February 2012 at the Farrington Inn Motel in North Brunswick. (*Id.* at *15.)

In response to Plaintiff's complaints, on or about January 7, 2020, February 7, 2020, and March, 2020, Defendants attempted to terminate Plaintiff and to "strip" Plaintiff of his "legal protection from the PBA [Police Benevolent Association] that is afforded to all law enforcement officer[s] in the State of [New Jersey]." (*Id.* at *3, *10.) Plaintiff also alleges that, since complaining about NBPD's alleged discriminatory practices, he "became a target of the police administration." (*Id.* at *3.) Specifically, he was denied promotions to the Traffic Safety Unit and to the Detective Bureau after submitting over six (6) "email requests" for promotions to these specialized units. (*Id.* at *4, *5.) Plaintiff alleges that each time, the position "was filled by new

---

[3] Ultimately, Plaintiff was suspended from NBPD based in part of the fact that he violated department policies by using his body worn camera, mobile video recorder, and personal phone to conduct an unauthorized investigation into the alleged illegal room search that occurred in 2012 at the Farrington Inn Motel. (*See* Pl. Opp., Ex. 6 at *48, *50.)

White officers, who did not have the training credentials for either bureaus." (*Id.* at *4.) He also alleges he was denied back-up when responding to burglary calls, providing an incident that occurred on October 8, 2017 as an example. (*Id.* at *3–4.) This "[l]ack of back-up or very late arrival of back-up[] continued regularly till [sic] the Plaintiff retired on May 1, 2020." (*Id.*)

On February 13, 2020, Plaintiff reported his concerns to the "NBC I-Team." (*Id.* at *6.)[4] According to Plaintiff, on or about February 17, 2020, Defendant Francis Womack III, Mayor of the Township of New Brunswick, initiated an inquiry to ascertain whether Plaintiff had solicited other officers or civilians in assisting in reporting his concerns. (*Id.*) Plaintiff alleges that this "further isolated Plaintiff from his co-workers and caused them to resent him." (*Id.*) This "barrier" between Plaintiff and his colleagues "perpetuated a hostile work environment, where it was becoming unsafe for the Plaintiff to perform his duties, especially on burglary calls." (*Id.*) Plaintiff further alleges that Defendants "sought aggressive ways to charge [] Plaintiff with high crimes as a coercive means to get [] Plaintiff to submit to their desires, and to drop the civil lawsuit against Defendants . . . ." (*Id.*)

On or about April 20, 2020, Defendants filed a "baseless internal affairs complaint against Plaintiff with the Middlesex County Prosecutor's Office Integrity Unit in an attempt to remove Plaintiff from his position of employment after all previous attempts failed to terminate Plaintiff." (*Id.* at *11.) Plaintiff further alleges that while NBPD was attempting to strip Plaintiff of his rights, NBPD was ignoring the fact that seven (7) NBPD officers "conspired and benefitted financially from defrauding the N. J. Public Health Insurance fund of more than [f]our [m]illion [d]ollars which was known to the township and the Defendants in 2020 to present 2023." (*Id.* at *4.) On

---

[4] Plaintiff explains in his opposition that he participated in an interview that aired on NBC on February 13, 2020. (ECF No. 29 ("Pl. Opp.") at 9.)

March 27, 2020, Plaintiff was suspended from NBPD, and on May 1, 2020, Plaintiff retired from NBPD. (*Id.* at \*4, \*13.)

### B. Procedural History

On December 2, 2018, Plaintiff filed a Complaint in the Law Division of the Superior Court of New Jersey against the North Brunswick Police Department, Deputy Chief Joseph Battaglia, and Captain Cordell Harris, along with other NBPD employees. (ECF No. 25-2, Ex. A ("State Ct Compl.").) Plaintiff brought claims for discrimination and retaliation under the New Jersey Law Against Discrimination ("NJLAD"), a violation of the Conscientious Employee Protection Act ("CEPA"), and four common law negligence claims. (*Id.* at ¶¶ 64–94.) After engaging in years of discovery and failed attempts at settlement, on May 25, 2021, the Superior Court granted Summary Judgment in favor of the defendants and dismissed the matter in its entirely with prejudice. (ECF No. 25-2, Ex. A ("State Ct. Order"); *see also* ECF No. 29 ("Pl. Opp.") at 6–8.)

In July 2020, Plaintiff filed a Verified Complaint against the Township of North Brunswick with the Department of Law and Public Safety Division of Civil Rights ("DCR"). (Statement ISO FAC at \*17; *see also* Pl. Opp. Ex. 11 at \*73.) Plaintiff alleged that North Brunswick "committed acts of unlawful employment discrimination within the meaning of the [NJLAD] when it subjected him to a hostile work environment, denial of benefits, and constructive discharge in reprisal for engaging in [NJLAD]-protected activity." (Pl. Opp. Ex. 11 at \*73.) In November 2022, the DCR concluded that there was no "probable cause or reasonable suspicion that the department discriminated against Plaintiff, retaliated against him, [or] created a hostile work environment that led to a constructive discharge." (Statement ISO FAC at \*17.)

Also in July 2020, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") for discrimination and retaliation. (Statement ISO FAC at \*15; *see also*

Pl. Opp. at 5.) On November 29, 2022, the EEOC dismissed Plaintiff's charge, and he was issued a right-to-sue letter, which he received on December 5, 2022. (ECF No. 21 ("FAC") at *6; *see also* Pl. Opp. at 11, Ex. 10 at *70.) The letter informed Plaintiff he had ninety (90) days to file a complaint in the United States District Court for the District of New Jersey. (Pl. Opp. at 11.)

On February 28, 2023, Plaintiff filed the instant action against the Township of North Brunswick, Mayor Womack, Chief Battaglia, and Captain Harris. (ECF No. 1.) After failing to sign the initial Complaint, on March 6, 2023, Plaintiff filed a "Corrected Complaint." (ECF No. 4.) On May 19, 2023, without seeking leave of Court, Plaintiff filed a "Proposed Amended Complaint." (ECF No. 18.) Ten days later, Plaintiff filed a "Corrected Proposed Amended Complaint," which is now the operative pleading, removing claims against Patrolman Jason Vallese and PBA Local 160. (FAC.)[5]

While Plaintiff's allegations and claims are difficult to discern, Plaintiff appears to bring claims for discrimination and retaliation under (1) the NJLAD, (2) Title VII of the Civil Rights Act, (3) the CEPA, and (4) the Fourteenth Amendment. Plaintiff also brings a "[r]etaliation and [c]oercion claim" pursuant to the Americans with Disabilities Act ("ADA") and a "[c]onspiracy" claim pursuant to 42 U.S.C. § 241. (FAC at *4; Statement ISO FAC at *2.) Plaintiff also brings a number of related state law claims. (FAC at *4; Statement ISO FAC at *2.) Plaintiff seeks an award of compensatory and consequential damages in the amount of $156,000 per year for four years as well as three months of back pay in the amount of $663,000 to complete Plaintiff's "planned 30 year retirement" in 2024. (Statement ISO FAC at *20.) Plaintiff also seeks punitive damages in the amount of $518,000 as well as an order from the Court enjoining Defendants "from

---

[5] Plaintiff's initial Complaint named Patrolman Jason Vallese and PBA Local 160 as defendants in this action. However, the parties stipulated on May 31, 2023, that Defendants Vallese and PBA Local 160 should be dismissed with prejudice. (ECF Nos. 19–20, 23.)

continuing their improper actions in connection with the supervision of their employees." (*Id.* at *21.)

On August 4, 2023, Defendants filed a Motion for Judgment on the Pleadings. (ECF No. 25-1 ("Def. MJP").) Defendants argue that Plaintiff's claims are precluded under the *res judicata* and *collateral estoppel* doctrines and barred by the relevant statutes of limitations. (*Id.* at 10, 16.) Defendants also argue that any claims under the ADA fail because Plaintiff does not allege he is disabled and under 18 U.S.C. § 241 fail because Plaintiff does not have standing to bring a claim under a criminal statute. (*Id.* at 19.) Next, Defendants argue that Plaintiff's Fourteenth Amendment claim fails because Plaintiff has not alleged sufficient facts in support of this claim. (*Id.* at 21.) Finally, Defendants argue that Plaintiff is not entitled to his requested relief. (*Id.* at 23.) On October 2, 2023, Plaintiff filed a Response in Opposition, (ECF No. 29 ("Pl. Opp.")), and on October 26, 2032, Defendants filed a Reply, (ECF No. 33 ("Def. Reply")).[6]

## II.   **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The pleadings are 'closed' after the complaint and answer are filed, along with any reply to additional claims asserted in the answer." *Horizon Healthcare Servs., Inc. v. Allied Nat. Inc.*, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007). In reviewing a motion for judgment on the pleadings, courts apply the same standards as when reviewing a motion to dismiss under Federal Rule of Civil Procedure (12)(b)(6). *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted); *see also Muhammad v. Sarkos*, 2014 WL 4418059, at *1 (D.N.J. Sept. 8, 2014).

---

[6] On October 31, 2023, Plaintiff filed another Brief in Opposition. (ECF No. 34.) The brief is similar to Plaintiff's initial Response in Opposition, but contains minor additions. (*See generally id.*) Under Local Civil Rule 7.1(d)(6), neither amended opposition briefs nor sur-replies are permitted without leave of Court, and thus the Court will not consider Plaintiff's submission.

Under Federal Rule of Civil Procedure (12)(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 406 (D.N.J. 2018). As such, "[a] complaint should not be dismissed unless it appears beyond doubt that 'the facts alleged in the complaint, even if true, fail to support the claim.'" *Syncsort Inc. v. Sequential Software, Inc.*, 50 F.Supp.2d 318, 324 (D.N.J. 1999). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In deciding a motion for judgment on the pleadings, like a motion to dismiss, a court may only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (citation omitted). Also as with a motion to dismiss, claims dismissed pursuant to a motion for judgment on the pleadings may be dismissed with or without prejudice. *See, e.g.*, *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d at 427.

The Third Circuit has advised that courts should apply procedural rules, like Rule 8, "flexibl[y]" to *pro se* plaintiffs. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Indeed, this caution is "driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Higgs v. Attorney Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) (citations omitted) (cleaned up); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." (citation omitted)).

## III.   <u>DISCUSSION</u>

The Court will begin with Defendants' argument that Plaintiff does not have standing to bring a claim under 18 U.S.C. § 241 ("Section 241").

### A.  42 U.S.C. § 241

Plaintiff alleges that Defendants violated Section 241 by fostering a hostile work environment and "retaliat[ing] against Plaintiff by allowing the hostile work environment and coercion to continue." (Statement ISO FAC at *2.) Title 18 is the Criminal Code of the United States, and Section 241 is a criminal statute that prohibits conspiracies undertaken to deprive an individual of his Constitutional rights. *See, e.g.*, *United States v. Piekarsky*, 687 F.3d 134, 144 (3d Cir. 2012). It does not provide a private cause of action. *Watson v. Washington Twp. of Gloucester Cnty. Pub. Sch. Dist.*, 413 F. App'x 466, 468 (3d Cir. 2011); *see also Ismail v. Pennsylvania*, No. 22-0932, 2023 WL 2984728, at *4 (M.D. Pa. Feb. 6, 2023), *report and recommendation adopted*, No. 22-932, 2023 WL 2302004 (M.D. Pa. Mar. 1, 2023) ("to the extent Plaintiff is seeking prosecution of the Defendants for violating 18 U.S.C. § 242, Plaintiff cannot bring federal criminal

charges . . . [n]or can Plaintiff seek relief ordering the criminal prosecution of Defendants."). Accordingly, Defendants' Motion is **GRANTED** as to Plaintiff's claim under Section 241.

When dismissing a plaintiff's claims, courts must grant leave to amend "absent evidence that amendment would be futile or inequitable." *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). An amended complaint would be futile if it "would fail to state a claim upon which relief could be granted." *Id.* at 115. Because there is no private cause of action under Section 241, any amendment to this claim would be futile. *Shane*, 213 F.3d at 116–17. Accordingly, Plaintiff's Section 241 claim is **DISMISSED** with prejudice.[7]

### B. STATUTE OF LIMITATIONS

Next, the Court turns to Defendants' arguments that Plaintiff's remaining claims are time-barred. Defendants argue that Plaintiff's NJLAD, CEPA, Title VII, Fourteenth Amendment, and ADA claims are barred by the applicable statutes of limitations.

Dismissal of a claim based on the statute of limitations is appropriate only when this defense is apparent on the face of the complaint. *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017); *see also In re Roberson*, 262 B.R. 312, 318 (Bankr. E.D. Pa. 2001) ("The statute of limitations may be a basis for a motion to dismiss and, therefore, a motion for judgment on the pleadings, 'only if the time alleged in the statement of the claim shows that the cause of action has not been brought within the statute of limitations.'" (quoting *Bethel v. Jendoco Construction Corporation*, 570 F.2d 1168, 1174 (3d Cir. 1978))).

---

[7] The Court also notes that Plaintiff lists "2C:13-5a(2) Criminal Coercion" and N.J. Stat. Ann. 40A:14-181.2 as part of his "Basis for Jurisdiction" on his *pro se* form complaint. Like 18 U.S.C. § 241, N.J. Stat. Ann. 2C:13-5a(2) is a criminal statute and therefore does not provide a private cause of action. *See, e.g., State v. Edoo*, No. A-5172-10T2, 2013 WL 1875978, at *1 (N.J. Super. Ct. App. Div. May 7, 2013). N.J. Stat. Ann. 40A:14-181.2 prohibits police departments from establishing quota systems for arrests or citations. Plaintiff provides no basis for the Court to conclude that this provision provides a private cause of action, and this Court is aware of none. Accordingly, to the extent that Plaintiff is attempting to bring claims under these statutes, those claims are dismissed with prejudice.

According to the First Amended Complaint, Plaintiff reported NBPD's alleged discriminatory and illegal practices from "July 2016 to February 13, 2020." (Statement ISO FAC at *18.) He alleges that Defendants retaliated against him in the summer of 2018 by banning him from writing more than one (1) summons to a motorist. He also alleges that he filed a complaint with the North Brunswick Internal Affairs Unit in July 2019. Plaintiff alleges that in response to his complaint, Defendants attempted to terminate him and strip him of his legal protection from the PBA between January 2020 and March 2020. In February 2020, Plaintiff reported his concerns to NBC and participated in a televised interview on February 13, 2020. In the spring of 2020, Defendants filed an Internal Affairs complaint against Plaintiff, and Plaintiff was suspended from NBPD. Plaintiff retired from NBPD on May 1, 2020. In short, all of Plaintiff's allegations occurred between July 2016 and May 1, 2020.

### 1. TIME-BARRED CLAIMS

Turning first to Plaintiff's NJLAD claim, the statute of limitations is two (2) years, subject to the exception of the continuing violations doctrine. *See Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611 (2002); *Montells v. Haynes*, 627 A.2d 654 (1993). The continuing violations doctrine allows a "plaintiff [to] pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period." *Shepherd*, 803 A.2d 611. The most recent date that any of the alleged acts occurred was May 1, 2020. Thus, the statute of limitations for Plaintiff's NJLAD claim expired on May 1, 2022. Plaintiff filed this action on February 28, 2023, approximately ten (10) months later. None of the acts alleged occurred after February 28, 2021, within the statutory limitations period. Thus, Plaintiff's NJLAD claim is barred by the statute of limitations.

As for Plaintiff's CEPA claim, the statute of limitations is one (1) year. *See* N.J. Stat. Ann. 34:19-5. If there is a continued course of retaliatory conduct by the employer, the limitations period "begins to run from the final act of retaliation." *Green v. Jersey City Bd. of Educ.*, 828 A.2d 883, 885 (2003). In this case, assuming that Plaintiff was subjected to a continued course of retaliatory conduct, the final retaliatory act alleged was Plaintiff's suspension on March 27, 2020, culminating in Plaintiff's retirement on May 1, 2020. Assuming the statute of limitations began to run on May 1, 2020, it expired on May 1, 2021, almost two years before this action was filed. Accordingly, Plaintiff's CEPA claim is also time-barred.

Next, claims premised on the Fourteenth Amendment must be brought pursuant to 42 U.S.C. § 1983 ("Section 1983"). Section 1983 claims, which are characterized as personal-injury claims, are governed by the applicable state's statute of limitations for personal-injury claims. *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). New Jersey's statute of limitations for personal-injury torts is two (2) years. *See* N.J. Stat. Ann. § 2A:14–2. Therefore, Plaintiff's Fourteenth Amendment claim is also untimely.

Plaintiff also brings a retaliation claim pursuant to the ADA.[8] For ADA claims, like Section 1983 claims, courts turn to the applicable state's statute of limitations for personal-injury claims—

---

[8] Defendants argue, and the Court agrees, that Plaintiff's ADA claim must also fail because Plaintiff has not alleged that he is disabled, that Defendants discriminated against him as a result of a disability or perceived disability, or that he opposed practices made unlawful under the ADA. (Def. MJP at 7–8.) In his Response in Opposition, Plaintiff does not appear to contest Defendants' argument. (Pl. Resp. at 18.) Rather, Plaintiff simply argues that his claims arise under the ADA because the ADA was "enacted as part of the landmark **Civil Rights Act of 1964** and is a civil rights law . . . ." (*Id.* (emphasis in original).) A *prima facie* claim of discrimination under the ADA requires a plaintiff to show, *inter alia*, that "he is a disabled person within the meaning of the ADA." *See Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). Plaintiff has not alleged he is disabled. Indeed, on his *pro se* form complaint, he checks the box for "race" as the basis for Defendants' alleged discrimination and does not check the box for disability or perceived disability. (FAC at *5.) To establish a *prima facie* claim for retaliation under the ADA, a plaintiff must demonstrate that he opposed any act or practice made unlawful under the ADA. *See* 42 U.S.C. § 12203. The Court finds that Plaintiff's allegations of acts wholly unrelated to disability-status do not constitute practices made unlawful under the ADA, as its stated purpose is the "elimination of discrimination against

in New Jersey, two years. *See Disabled in Action of Pa. v. S.E. Pa. Trans. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008). Accordingly, Plaintiff's ADA claim is also time barred.

Plaintiff argues in his brief in opposition that his claims are not time-barred even though he retired from NBPD in May 2020. (Pl. Opp. at 15.) Plaintiff argues that "harassment and retaliation against [him] has continued up to January of 2022." (*Id.*) He appears to base this argument on his allegation that "[p]ublic servants acting under the color of law have continued to target minorities that live in and pass through North Brunswick Township." (*Id.*) Plaintiff does not have standing to brings claims on behalf of other minority citizens of North Brunswick Township. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (a plaintiff must have a "personal stake" in the case). Accordingly, this allegation provides no basis to find Plaintiff's claims timely.

In sum, Plaintiff's NJLAD, CEPA, Fourteenth Amendment, and ADA claims are all barred by the statute of limitations and must be dismissed. Generally, an "impediment such as [] a statute of limitations" indicates that dismissal should be with prejudice. *Doe v. Est. of C.V.O.*, 303 A.3d 678, 686 (App. Div. 2023) (citing *Nostrame v. Santiago*, 61 A.3d 893, 904 (2013)). The Court finds that amendment to Plaintiff's NJLAD, CEPA, Fourteenth Amendment, and ADA claims would be futile because they are time-barred. *See Reaves v. Monmouth Univ.*, 22-01782, 2022 WL 17722803, at *9 (D.N.J. Dec. 15, 2022), appeal dismissed, No. 22-3406, 2023 WL 4087443 (3d Cir. Apr. 27, 2023) ("while the Court is wary to dismiss a complaint filed by a pro se litigant, that is not to say that dismissal with prejudice is inappropriate in this instance, particularly in light of the futility that would result in allowing Plaintiff to amend where the claims are barred under the

---

individuals *with disabilities*." 42 U.S.C. § 1201(b) (emphasis added). Thus, Plaintiff's ADA claim must be dismissed on this additional basis.

statute of limitations."). Accordingly, Defendants' Motion is **GRANTED** with prejudice as to Plaintiff's NJLAD, CEPA, Fourteenth Amendment, and ADA claims.

### 2. TIMELY CLAIM

Having determined that the majority of Plaintiff's claims are time-barred, the Court turns to Plaintiff's Title VII claim. Before filing a Title VII claim in federal court, a plaintiff must file a charge with the EEOC within three hundred (300) days of the alleged unlawful employment practice. *Noel v. The Boeing Co.*, 622 F.3d 266, 270 (3d Cir. 2010), *as amended* (Oct. 18, 2010); *see also* 42 U.S.C. § 2000e-5(e)(1). If the EEOC dismisses the charge, the plaintiff has ninety (90) days after receiving a right-to-sue letter from the EEOC. *Commc'ns Workers of Am. v. New Jersey Dep't of Pers.*, 282 F.3d 213, 216 (3d Cir. 2002).

Defendants argue that Plaintiff's Title VII claim is untimely because Plaintiff has failed to allege the date that his EEOC charge was filed nor has Plaintiff provided the Court with the charge to demonstrate that the charge was filed within the requisite 300-day time period. (Def. MJP at 6 n.1.) While Defendants are correct that Plaintiff did not attach the charge to the Amended Complaint, Plaintiff does allege that he "filed an EEOC case against North Brunswick in July 2020" and that he received his right-to-sue letter from the EEOC on December 5, 2022. (FAC at *6, Statement ISO FAC at *15.) Plaintiff also attached to his opposition brief the right-to-sue letter signed by the EEOC on November 29, 2022. (Pl. Opp., Ex. 10.)[9] Presuming May 1, 2020 as the final date of the alleged unlawful practice, the Court finds that Plaintiff sufficiently alleged that he filed his charge with the EEOC within 300 days of the alleged unlawful practice and that he filed the present action within 90 days of receiving his right-to-sue letter. Accordingly, Plaintiff's Title

---

[9] As noted above, in deciding a motion for judgment on the pleadings, courts may consider matters of public record. *Wolfington*, 935 F.3d at 195. Matters of public record include EEOC charges and related EEOC documents, including the right-to-sue letter. *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), *aff'd*, 276 F.3d 579 (3d Cir. 2001) (collecting cases).

VII claim is not barred by the statute of limitations. The Court thus turns to Defendants' alternative arguments to determine whether Plaintiff's Title VII claim survives.

## C. PRECLUSION

Defendants argue that Plaintiff's claims based on hostile work environment and retaliation are barred by the preclusion doctrines because they were already litigated in Plaintiff's 2018 Superior Court matter. (*See* Def. MJP at 3–4; Def. Reply at 4.)[10] The Court will begin with the related *res judicata* and entire controversy doctrines.

To determine whether a state court judgment precludes subsequent federal court action, federal courts must look to "the law of the state that adjudicated the original action." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999). New Jersey law, like federal law, requires three elements for the application *res judicata*, commonly known as claim preclusion:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

*Watkins v. Resorts Int'l Hotel & Casino, Inc.,* 124 N.J. 398, 412 (1991).

"Claim preclusion in the traditional sense tends to be subsumed by New Jersey's 'entire controversy' rule." *Siljee v. Atl. Stewardship Bank*, No. 15-1762, 2016 WL 2770806, at *7 (D.N.J. May 12, 2016). The entire controversy doctrine "extinguishes any subsequent federal-court claim that *could have been joined*, but was not raised in the prior state action." *Id.* (emphasis added). New Jersey Court Rule 4:30A, which codifies the entire controversy doctrine, provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the

---

[10] Because the Court finds that Plaintiff's NJLAD, CEPA, Fourteenth Amendment, and ADA claims must be dismissed with prejudice based on statute of limitations, *see supra*, this section focuses on Plaintiff's Title VII claim only.

preclusion of the omitted claims to the extent required by the entire controversy doctrine." The entire controversy doctrine precludes claims even when they are "separate and independently cognizable cause[s] of action," *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999), and extends to federal civil rights claims that could have been but were not presented in a previous state court action, *Tancrel v. Mayor and Council of Twp. of Bloomfield*, 583 F. Supp. 1548, 1550 (D.N.J. 1984).

The Court finds that, based on the *res judicata* and entire controversy doctrines, Plaintiff's Title VII claim is precluded. First, the Superior Court order granting the defendants' Motion for Summary Judgment and dismissing Plaintiff's case with prejudice was a final judgment on the merits. *See Est. of Hanges v. Metro. Prop. & Cas. Ins. Co.*, 997 A.2d 954, 963 (2010) ("an order granting summary judgment and disposing of the case is a final judgment"); *see also Hubicki v. ACF Indus., Inc.*, 484 F.2d 519, 524 (3d Cir. 1973) ("summary judgment is a final judgment on the merits sufficient to raise the defense of *res judicata* . . . .").

Second, the parties to this case are identical to or in privity with the parties to the prior action. In deciding whether two parties are in privity, "the New Jersey Supreme Court has suggested that the determinative question . . . is whether one party was the 'virtual representative' of the other, in the sense that the former could control the arguments of the latter." *Evans v. City of Newark*, No. 14-120, 2023 WL 2535283, at *12 (D.N.J. Mar. 16, 2023) (citing *State v. K.P.S.*, 112 A.3d 579, 587 (N.J. 2015)); *see also Zirger v. Gen. Acc. Ins. Co.*, 676 A.2d 1065, 1071 (N.J. 1996) (same). To find privity, there must be "such an identification of interest between the two [parties] as to represent the same legal right." *Id.* (citation omitted).

In his Superior Court case, Plaintiff named, *inter alia*, NBPD, Chief Battaglia, and Captain Harris as defendants. (*See* State Ct. Compl.) In the instant case, Plaintiff named the Township of

North Brunswick, Chief Battaglia, Captain Harris, and Mayor Womak as defendants.[11] NBPD is part of the Township of North Brunswick. *See* North Brunswick Ordinance §§ 69-14; *see also* N.J. Stat. Ann. § 40A:14-118 (municipal police department is "an executive and enforcement function of municipal government"); *Adams v. City of Camden*, 461 F. Supp. 2d 263, 266 (D.N.J. 2006) (a police department is an arm of a municipality, not a separate entity). Thus, the two parties are identical for purposes of *res judicata*. Moreover, in North Brunswick, the Police Director is appointed by and reports directly to the mayor. *Id.* §§ 69-10, 12, 13.1. The Chief of Police is also appointed by the mayor and reports directly to the Police Director. *Id.* §§ 69-40, 42. The Court therefore finds that NBPD and Mayor Womak share the same legal interest and represent the same legal right.

The more difficult question is whether Plaintiff's Title VII claim in this case is part of the same transaction or occurrence—or series of transactions or occurrences—as those claims adjudicated in the Superior Court action. As in the case at bar, in his Superior Court case, Plaintiff alleged that the vast majority of the NBPD workforce is "male and Caucasian" and has the "look and feel of an 'old boys' network." (*See* State Ct. Compl. at 3.) Plaintiff alleged that he was "ostracized" at NBPD and that he was overlooked for positions for which he was qualified in favor of white officers. (*Id.* at 4.) Plaintiff also alleged that he was denied appropriate back-up in violation of NBPD protocol and that white officers would engage in "illegal searches and seek to criminalize minority victims." (*Id.* at 5–6.) Plaintiff alleged that he was retaliated against, including being subjected to inappropriate discipline, for reporting discriminatory, illegal practices and being passed over for promotion to the Detective Unit despite his credentials. (*Id.* at 7.) In the Superior

---

[11] As noted above, Plaintiff also originally named Patrolman Vallese and PBA Local 160 as defendants, but voluntarily dismissed his claims against them with prejudice on May 31, 2023. (ECF No. 23.)

Court action, Plaintiff brought NJLAD and CEPA claims alleging hostile work environment, discrimination, and retaliation. In this case, Plaintiff brings those same claims, but also adds a federal Title VII claim.

The mere fact that Plaintiff also predicates his claims on Title VII does not bar preclusion of his claims. *Churchill*, 183 F.3d at 195. New Jersey law is clear that the entire controversy doctrine precludes not only claims that *were* brought in a prior action but also claims that *should have been* brought. Plaintiff could have brought his federal Title VII claim in Superior Court because state courts possess concurrent jurisdiction over Title VII claims. *Dowdell v. Univ. of Med. & Dentistry of New Jersey*, 94 F. Supp. 2d 527, 535 (D.N.J. 2000) (citing *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820 (1990)). However, that is not the end of the inquiry.

Plaintiff argues in his Brief in Opposition that the Superior Court action only pertained to "incidents that occurred prior to instituting the complaint on December 3, 2018." (Pl. Opp. at 13.) In this case, Plaintiff brings additional allegations that arose until the time of his retirement from NBPD in May 2020. The Court finds the fact that additional allegations arose during the pendency of Plaintiff's state court action also does not bar preclusion of his Title VII claim. The relevant inquiry for *res judicata* is not whether claims arose prior to the *filing* of the first action but whether claims arose prior to *judgment* in the first action. *Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163, 166 (3d Cir. 1986); *see also* Restatement (Second) of Judgments § 24 cmt. f (1982) ("Material operative facts occurring after the *decision* of an action with respect to the same subject matter may . . . be made the basis of a second action not precluded by the first." (emphasis added)). While Plaintiff's initial Superior Court complaint may have pertained only to allegations arising before December 2018, final judgment was not issued until May 2021. All of the allegations in the instant case arose before May 2020—a year before final judgment was entered in the prior action.

Plaintiff, clearly on notice, should have alerted the Superior Court and sought leave to add his additional allegations.

Nonetheless, the Court is cognizant of the fact that, before bringing a Title VII claim, plaintiffs must exhaust their administrative remedies through the EEOC. *See McNasby v. Crown Cork & Seal Co.*, 888 F.2d 270, 282 (3d Cir. 1989) ("Filing a charge and receiving a right to sue letter are prerequisites to an individual's bringing suit under Title VII."). As noted above, Plaintiff filed his state court action in 2018, and judgment was entered in May 2021. Before the final judgment was issued, in July 2020, Plaintiff filed a charge with the EEOC. However, Plaintiff did not receive his right-to-sue letter until after final judgment was issued. Thus, the Court must determine whether Plaintiff's claims are precluded even though he had not yet received a right-to-sue letter before judgment was entered in the prior action.

The Third Circuit considered a similar case where the plaintiff had brought a FMLA claim in a prior action and was attempting to bring a related ADA claim in a subsequent action. *Churchill v. Star Enterprises*, 183 F.3d 184, 190 (3d Cir. 1999). The plaintiff argued that she could not have brought her ADA claim in the prior action because she had not received her right-to-sue letter by the time the prior action was dismissed.[12] *Id.* The Third Circuit explained that a party must wait 180 days after filing a charge with the EEOC before being able to forego the administrative process and file suit. *Id.* Thereafter, a party may "circumvent the EEOC procedures and seek relief through a private enforcement action in a district court." *Id.* (quoting *Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 361 (1977)). The *Churchill* Court found that the plaintiff could have requested a right-to-sue letter after 180 days had passed, but instead "sat on her rights." *Id.* at 191.

---

[12] A party bringing an employment discrimination claim under Title I of the ADA must follow the administrative procedures set forth in Title VII of the Civil Rights Act. *Churchill*, 183 F.3d at 190.

19

The Third Circuit also pointed out that the plaintiff could have requested the court to stay the proceeding while she waited for her right-to-sue letter from the EEOC. *Id.* at 192. The Court concluded that the plaintiff's ADA claim could have been brought in the prior action and was therefore precluded. *Id.* at 195. Although the *Churchill* court was examining the effect of a prior federal court judgment and was thus applying federal law, the Court finds Third Circuit's reasoning highly persuasive.

The Court also notes that numerous other Circuits, although primarily applying federal law, have also determined that Title VII claims are precluded by prior adjudications even though right-to-sue letters were not obtained until after the final judgments were entered. *See Havercombe v. Dep't of Educ. of Com. of P.R.*, 250 F.3d 1, 8 (1st Cir. 2001) ("[T]he lack of a right-to-sue letter would not have prevented plaintiff from notifying the court of his allegations of defendants' continuing violations of federal anti-discrimination laws (against which the defendants were at that time engaged in defending) and, if need be, asking for a stay until the EEOC issued him the letter . . . [or] request[ing] of the EEOC an acceleration of the administrative process."); *Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000) (holding that ADA claim was not exempt from res judicata where plaintiff failed to obtain a right to sue letter during the pendency of the first action); *Heyliger v. State Univ. & Community College Sys.*, 126 F.3d 849, 854–56 (6th Cir. 1997) (concluding that Title VII claims were precluded even though the plaintiff had not yet received a right-to-sue letter because the prior action was pending "for almost three years, allowing far more time than necessary for [plaintiff] to obtain a right-to-sue letter"); *Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223, 225 (7th Cir. 1993) (plaintiff could have asked the EEOC to accelerate the administrative process, and Title VII plaintiffs should "enjoy no immunity from res judicata"); *Woods v. Dunlop Tire Corp.*, 972 F.2d 36 (2d Cir. 1992) (plaintiff could have requested

a stay of the action pending the outcome of the EEOC proceeding, and Title VII plaintiffs are not entitled to "special treatment").

A court in this District, applying New Jersey preclusion law, has reached the same result. In *Dowdell v. Univ. of Med. & Dentistry of New Jersey*, the court determined that a plaintiff's Title VII claims were precluded by a prior state court action in which the plaintiff brought a related NJLAD claim even though the plaintiff had not yet received a right-to-sue letter when the state court entered its judgment. 94 F. Supp. 2d 527, 537 (D.N.J. 2000**).** The Honorable Joseph A. Greenaway, Jr. reasoned, "while the statute requires that the complainant institute administrative proceedings through the EEOC, it does not require a complainant to wait indefinitely for an EEOC conclusion—the right-to-sue letter may be requested at any point after 180 days have passed, and the EEOC must issue the letter upon such request." *Id.* at 538. Judge Greenaway concluded that the plaintiff's failure to demand a right-to-sue letter and failure to attempt to consolidate his claims into a single action precluded his subsequent Title VII suit. *Id.* at 539.

Based on this overwhelming weight of authority, the Court finds that Plaintiff's claims are precluded even though he had not yet received his right-to-sue letter at the time the Superior Court entered its final judgment. Presuming Plaintiff filed his charge with the EEOC in July 2020, Plaintiff could have requested his right-to-sue letter after 180 days in December 2020—five months before the Superior Court entered judgment for the defendants. Plaintiff also could have notified the Superior Court of additional allegations supporting his claims that arose during the pendency of the prior action and of his pending administrative proceedings, and could have requested that the Superior Court stay his state court action pending the outcome of the administrative proceeding. The Third Circuit has stated that requiring a plaintiff to obtain a right-to-sue-letter and stay pending proceedings "is not an onerous burden." *Churchill*, 183 F.3d at 193;

*see also Dowdell*, 94 F. Supp. at 539 ("Had [Plaintiff] undertaken these simple measures, requiring only due diligence on his part, his Title VII claims could have been added to his NJLAD claims without difficulty."). Instead, Plaintiff "pursued a course of piecemeal litigation" disallowed under the entire controversy doctrine and *res judicata. Dowdell*, 94 F. Supp. at 539–40. The Court finds that Plaintiff could have, and should have, brought his Title VII claim in Superior Court. His failure to do so precludes his Title VII claim in the present suit.[13]

Accordingly, Defendants' Motion is **GRANTED** as to Plaintiff's Title VII claim. Because Plaintiff's Title VII claim is barred under the *res judicata* and entire controversy doctrines, the Court finds that amendment of Plaintiff's Title VII claim would be futile. *See Kolodzij v. Borough of Hasbrouck Heights*, No. 18-00481, 2021 WL 753885, at *4 (D.N.J. Feb. 26, 2021) ("Plaintiff's FAC warrants dismissal with prejudice because his claims are precluded under the entire controversy and res judicata doctrines."); *Russomanno v. Dugan*, No. 20-12336, 2021 WL 1748135, at *6 (D.N.J. May 4, 2021), *aff'd,* No. 21-2004, 2021 WL 4075790 (3d Cir. Sept. 8, 2021) ("Because Plaintiff's claims are barred under the doctrine of *res judicata* . . . any further amendment would be futile . . . .").[14] The Court finds it appropriate to dismiss Plaintiff's Title VII claim with prejudice.

---

[13] Because Plaintiff's claims are barred by *res judicata*, the Court finds it unnecessary to address Defendants' *collateral estoppel* arguments.

[14] The Court also notes that Plaintiff has already filed, without seeking leave of Court, four pleadings in this matter—an initial Complaint, Corrected Complaint, Proposed Amended Complaint, and Corrected Proposed Amended Complaint.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion for Judgment on the Pleadings is **GRANTED**. The Court finds that any attempt to amend the pleading in this matter would be futile. Accordingly, this case is **DISMISSED** with prejudice in its entirety. An appropriate Order will accompany this Opinion.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

<u>Dated</u>: February 13, 2024

23